# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Respondent,

v.

Justin Cole Carroll, Appellant.

Appellate Case No. 2024-000722

Appeal From Colleton County
Robert J. Bonds, Circuit Court Judge

Opinion No. 6158
Heard April 8, 2026 – Filed August 12, 2026

**AFFIRMED**

Deputy Chief Attorney for Capital Appeals David
Alexander, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Deputy
Attorney General Donald J. Zelenka, Senior Assistant
Deputy Attorney General Melody Jane Brown, and
Assistant Attorney General Tommy Evans, Jr., all of
Columbia; and Solicitor Isaac McDuffie Stone, III, of
Bluffton, all for Respondent.

**MCDONALD, J.:** Justin Cole Carroll appeals his conviction for murder, arguing
the circuit court erred in ruling he lacked standing to challenge evidence obtained
from the victim's cell phone. Carroll further argues the circuit court erred in
declining to suppress evidence obtained from his own cell phone and from cell
tower records. We affirm Carroll's conviction and sentence.

**Facts and Procedural History**

Domasia Holloway (Victim) and Caroll were in a romantic relationship for approximately two years and lived together at a Walterboro apartment complex (Forest Pointe) for some period of time. When Victim called her mother in distress in January 2021, her mother called 911; she then helped Victim pack Carroll's belongings and take them to his grandmother. Carroll never moved back to Victim's Forest Pointe apartment after this incident.

On May 22, 2021, Victim visited her mother before returning to Forest Pointe, where she parked near the 300 building. Video footage shows Carroll pulling into the apartment complex behind Victim and parking near a mailbox area on the other side of the parking lot. Carroll walked behind the 200 building and appeared to smoke a cigarette; he then approached Victim's silver Lexus and fired multiple shots into her car. After shooting Victim, Carroll ran toward the complex office and then back in the direction of the mailboxes before returning to his truck and leaving Forest Pointe.

Sergeant Ross Hantz of the Walterboro Police Department (WPD), an off-duty officer who lived at Forest Pointe, heard several gunshots between 10:00 and 10:30 p.m. He grabbed his police gear, dialed 911, and ran outside. Because it was dark and he had only the flashlight on his phone, Sergeant Hantz retrieved his flashlight from his police vehicle. Once inside the cruiser, he saw several bullet holes in the driver's side window of the silver Lexus parked next to his vehicle. Sergeant Hantz later reviewed Forest Pointe's surveillance footage and collected potential evidence behind the 200 building.

Officer Carmen Hartley and Detective Charles Shipp, both of the WPD, also responded to the shooting. Officer Hartley saw a silver Lexus with a female slumped over the steering wheel, collected shell casings and fragments, and photographed the scene.[1] When Victim's body was removed from the Lexus, Detective Shipp recovered her cell phone. During the investigation, law enforcement learned about the prior incident between Carroll and Victim. Detective Shipp then pulled Carroll's information from the Department of Motor Vehicles and compared Carroll's driver's license photo, height, and weight to the surveillance video of the assailant.

---

[1] Kevin Baker of Colleton County Fire Rescue found Victim "sitting in the driver's seat slumped over with multiple gunshot wounds with no signs of life."

After reviewing a nearby church's video surveillance of a white, single-cab pickup truck in the area prior to Victim's murder and learning from Carroll's family members that he was not at home that night, law enforcement issued a be on the lookout (BOLO) for Carroll's truck. Officers later found Carroll driving a pickup truck matching the vehicle in the video. Although they detained Carroll, performed a gunshot residue (GSR) test, and seized his cell phone, Carroll was not arrested at that time.

Officer Whitlee Fisk took Victim's phone to her boyfriend to find out if he knew the passcode, and he opened the phone for Officer Fisk. Law enforcement subsequently obtained a search warrant for the contents of Victim's phone and found a Snapchat video of someone matching Carroll's height and weight approaching Victim's vehicle. The video revealed a white male—wearing a black face mask around his chin and smoking a cigarette—approaching the Lexus. Text accompanying the video read, "follow[ed] me to my apartment and I saw him behind me and locked myself in the car. I've asked him multiple times to leave me alone. Trying not to be fed [up] but this has to stop!!"

Carroll was arrested and charged with murder and possession of a weapon by a person convicted of a felony. During a pretrial motions hearing, Carroll moved to suppress evidence obtained through three search warrants. The circuit court denied his motion to suppress evidence obtained from Victim's cell phone, finding Carroll lacked standing to argue the legitimacy of a search warrant for Victim's property. Carroll also argued the search warrants for his own phone records and for Verizon cell tower records were invalid and that any evidence obtained through these warrants was inadmissible. The circuit court agreed that the supporting affidavit accompanying the warrant request for Carroll's cell records was insufficient to establish probable cause until Detective Shipp testified as to what he told the magistrate under oath in supplementing the affidavit. The circuit court found the sworn oral supplementation was sufficient to establish probable cause as to Carroll's phone records. Carroll next argued that the search warrant for the Verizon tower records was invalid due to law enforcement's failure to submit a signed affidavit. The circuit court denied this motion as well, finding the signature defect was a scrivener's error and the search warrant issued for the cell tower records was lawful.

Following a jury trial, Carroll was convicted of murder, and the circuit court sentenced him to sixty years.

**Standard of Review**

"[A]ppellate review of a motion to suppress based on the Fourth Amendment involves a two-step analysis. This dual inquiry means we review the trial court's factual findings for any evidentiary support, but the ultimate legal conclusion . . . is a question of law subject to de novo review." *State v. Frasier*, 437 S.C. 625, 633–34, 879 S.E.2d 762, 766 (2022).

**Analysis**

## I. Standing

Relying on *State v. McKnight*, 291 S.C. 110, 352 S.E.2d 471 (1987), Carroll argues the circuit court erred in ruling he lacked standing to challenge evidence found on Victim's cell phone. He contends this evidence was obtained as the result of an invalid search warrant and faulty warrant procedure and then impermissibly used against him at trial. We agree that Carroll has standing under our appellate precedent to challenge the admissibility of this evidence but find Detective Shipp's oral supplementation cured the deficiency in the scant search warrant affidavit.

"Evidence seized in violation of the Fourth Amendment must be excluded from trial." *State v. Dill*, 423 S.C. 534, 542, 816 S.E.2d 557, 562 (2018) (quoting *State v. Khingratsaiphon*, 352 S.C. 62, 69, 572 S.E.2d 456, 459 (2002)). "A search or seizure is reasonable under the Fourth Amendment when it is authorized by a warrant that is supported by probable cause." *Id.* "A warrant is supported by probable cause if, given the totality of the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. Kinloch*, 410 S.C. 612, 617, 767 S.E.2d 153, 155 (2014). "Our task is to decide whether the magistrate had a substantial basis for concluding probable cause existed. *State v. Crummey*, 443 S.C. 94, 107, 902 S.E.2d 391, 398 (Ct. App. 2024) (quoting *State v. Dupree*, 354 S.C. 676, 683, 583 S.E.2d 437, 441 (Ct. App. 2003)).

"In South Carolina, search warrants shall issue 'only upon affidavit sworn to before the magistrate . . . establishing the grounds for the warrant.'" *Id.* (quoting S.C. Code Ann. § 17-13-140 (2024)). "Sworn oral testimony is permissible to supplement search warrant affidavits which are facially insufficient to establish probable cause." *Dill*, 423 S.C. at 542, 816 S.E.2d at 562. "As to the validity of a search warrant, we have noted that '[a] magistrate's determination of probable cause to search is entitled to substantial deference . . . on review.'" *State v. Jones*,

435 S.C. 138, 143, 866 S.E.2d 558, 561 (2021) (quoting *State v. Crane*, 296 S.C. 336, 339, 372 S.E.2d 587, 588 (1988)).

"The affidavit must contain sufficient underlying facts and information upon which the magistrate may make a determination of probable cause." *State v. Gore*, 408 S.C. 237, 247, 758 S.E.2d 717, 722 (Ct. App. 2014) (quoting *State v. Philpot,* 317 S.C. 458, 461, 454 S.E.2d 905, 907 (Ct. App. 1995)). "The magistrate should make a probable cause determination based on all of the information available to the magistrate when the warrant was issued." *Id.* "In determining the validity of the warrant, a reviewing court may consider only information brought to the magistrate's attention." *Id.* at 248, 758 S.E.2d at 722

In *McKnight*, an officer obtained a search warrant after telling a magistrate that he believed drugs and stolen goods would be found inside a mobile home. 291 S.C. at 112, 352 S.E.2d at 472. The magistrate then filled out the search warrant form and the officer signed it. *Id.* The officer did not complete an affidavit; instead, the magistrate placed the officer under oath and the officer "orally recited the facts upon which the warrant was based. No affidavit was ever executed." *Id.* When the State later sought to use evidence found during the mobile home search, the circuit court granted the defendants' motions to suppress despite the State's argument that they lacked standing to challenge the warrant. *Id.* On review, our supreme court explained, "A search warrant affidavit which itself is insufficient to establish probable cause may be supplemented before the magistrate by sworn oral testimony." *Id.* at 113, 352 S.E.2d at 472–73. "However, sworn oral testimony, standing alone, does not satisfy the statute." *Id.* at 113, 352 S.E.2d at 473. "A search warrant that would survive constitutional scrutiny may still be defective under" the warrant statute found at section 17-13-140 of the South Carolina Code (2024). *Id.* at 113, 352 S.E.2d at 472.

The State argued the *McKnight* defendants lacked standing to challenge the legality of the search because they had no legitimate expectation of privacy in the searched premises. *Id.* at 115, 352 S.E.2d at 474. In rejecting the State's argument, our supreme court compared the protections of the Fourth Amendment to those of South Carolina's warrant statute:

> The Fourth Amendment to the United States Constitution guarantees to individuals the right to be free from unreasonable searches and seizures. One who seeks to have evidence suppressed on this basis must establish that his own Fourth Amendment rights were violated.

These are personal rights which may not be asserted vicariously. The defendant who seeks to suppress evidence on Fourth Amendment grounds must demonstrate a legitimate expectation of privacy in connection with the searched premises in order to have standing to challenge the search. The federal courts have promulgated a sizeable body of law developing and refining the concept of standing.

On the other hand, the rights afforded by Section 17-13-140 are not dependent upon a showing of an expectation of privacy in the searched premises. The primary purpose of the statute is to insure the timely recording of the testimony upon which the judicial officer relied in issuing the warrant. However, the primary benefit of the statute "is to the person arrested or searched." Therefore, one contesting the legality of a search because of a defect under Section 17-13-140 need only show that the State is attempting to introduce the evidence against him.

*Id.* at 114–15, 352 S.E.2d at 473–74. The supreme court noted its ruling was based on the stricter statutory grounds—as opposed to a constitutional inquiry—and thus affirmed the circuit court's finding that each of the defendants against whom the evidence was offered had standing to object to the validity of the search. *Id.*

The affidavits supporting the warrant requests for the two cell phones here state:

On May 22, 2021, officers with the Walterboro Police Department responded to [redacted] Forest Circle (Forest Pointe Apts.) Walterboro SC 29488 in reference to multiple shots fired in the area. Upon initial response a silver [L]exus [redacted] was observed to have what appeared to be bullet damage to the driver side window, furthermore a black female was observed in the driver seat and appeared to be nonresponsive. A review of the camera footage in the area revealed a vehicle that followed the victim into the complex then turning into the parking area of the 100 building. Shortly after a white male is seen walking from this area to the area that the victim parked (300 building). After the incident

occurs the white male is seen running back in the direction of the 100 building and a late model pickup truck can be seen leaving the area. The phone was seized for further investigation.

During the pretrial hearing on his motion to suppress, Carroll argued the search warrant affidavit was "woefully defective" and that under *McKnight*, he had the right to challenge the warrant for Victim's phone. He noted the search warrant for Victim's phone contains not only an illegible signature but an erroneous 2014 date. Additionally, the warrant return was never signed. The circuit court agreed with Carroll that the affidavit did not set forth the requisite probable cause.

The State responded that although a detective orally supplemented the warrant affidavit, he was unable to recall which magistrate issued the warrant. The State then called Detective Shipp, who testified:

> A: I did indicate that there was a white male seen during the time of the incident that had left the area of the 100 building walking towards the victim's vehicle. This white male is seen in the breezeway of her apartment building prior to making contact with her at her vehicle. A short time later, he's seen running from her victim [sic] back toward the area where the truck was parked.
>
> Q: Okay. And was there a reason you believed that to be Justin Carroll?
>
> A: While on scene, it was brought to my knowledge that we had a prior report with the victim. And we took the information from that report and saw that the offender in that case was Justin Carroll. Take a look at his DMV, compared it to video footage we were looking at on scene.
>
> Q: Okay. Did you have any reason to believe he drove a pickup truck?
>
> A: There is one registered to his father, I believe it was.
>
> Q: All right.

. . . . .

Q: What was he pulled over in later that night?

. . . . .

A: In a white GMC pickup.

Q: Okay. And on your search warrant, does it mention that the area to be searched is Justin Carroll's LG phone?

A: It does.

Q: Did you tell the magistrate or municipal judge under oath anything in addition to what you have written in that paragraph?

A:Yes.

Q: Okay. And did you tell them why Justin Carroll was a suspect?

A: He became my lead suspect because of the prior incident at that location involving the two parties, along with the DMV info and matching his height and weight and his DMV photo too to the video footage on scene.

Q: Did you tell the judge that you believe it to be Justin Carroll in that video footage that you mentioned in the PC affidavit?

A: I did.

Here, the affidavit contains only vague assertions that a white male was seen running away from the area of the shooting, and the circuit court properly recognized that this affidavit alone did not provide probable cause for the issuance of the search warrant for Carroll's phone. Still, the circuit court accepted Detective Shipp's testimony that he orally supplemented the written warrant affidavit and thus denied Carroll's motion to suppress evidence pulled from both phones.

Carroll has standing to challenge the warrant for each phone because the State is attempting to introduce this evidence against him, and he is contesting the legality of a search due to an alleged defect presented pursuant to section 17-13-140. *See McKnight*, 291 S.C. at 114–15, 352 S.E.2d at 473–74 (stating "one contesting the legality of a search because of a defect under Section 17-13-140 need only show that the State is attempting to introduce the evidence against him."). But our review of the record reveals abundant evidentiary support for the circuit court's finding of probable cause based on Detective Shipp's sworn oral supplementation. *See State v. Johnson*, 413 S.C. 458, 467, 776 S.E.2d 367, 371 (2015) ("Credibility findings are treated as factual findings, and therefore, the appellate inquiry is limited to reviewing whether the trial court's factual findings are supported by any evidence in the record.").

## II. Cell Phone Evidence

Carroll next argues the circuit court erred in denying his motion to suppress evidence obtained from his cell phone because the affidavit accompanying the warrant application did not contain the probable cause necessary to support the search and the alleged oral supplementation was not reliable. We disagree.

Initially, we question whether this argument is preserved for our review because Carroll did not argue before the circuit court that the oral supplementation was unreliable. *See Staubes v. City of Folly Beach*, 339 S.C. 406, 412, 529 S.E.2d 543, 546 (2000) ("It is well-settled that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial court to be preserved for appellate review."). Still, we find that while the warrant affidavit alone does not support a probable cause finding, Officer Shipp testified under oath that he orally supplemented the affidavit. In ruling, the circuit court stated:

> I believe that, as a result of [*State v. Jones*, 342 S.C. 121, 128, 536 S.E.2d 675, 678 (2000)], it's permissible for there to be oral supplementation. I believe the officer—he testified under oath as to the supplementation and what he told the magistrate he supplemented. And if, in fact, that's what he did—I have no reason to doubt him. But if, in fact, that's what he did, clearly at that point there was more than adequate probable cause based on the supplementation. I don't see anywhere where they're required to write anything down.

> And so, again, I'm not harping you on best use practices, but, certainly, if there had been something in writing, we wouldn't have to worry about this and spend our time researching these matters.

Our review of the record reveals evidentiary support for the circuit court's probable cause determination based on Detective Shipp's oral supplementation. Thus, we affirm the circuit court on this point as well.

## III.     Cell Tower Evidence

Finally, Carroll argues the circuit court erred in declining to suppress evidence obtained from the cell tower records because the affidavit in support of the warrant seeking these records was unsigned and failed to state probable cause. Carroll contends this renders the affidavit unsworn and the warrant invalid. We disagree.

Although this search warrant was signed by the magistrate who found probable cause, Detective Shipp failed to sign the underlying warrant affidavit. At the pretrial hearing, Detective Shipp explained that his failure to sign the affidavit was "just an oversight." He further testified that he presented the affidavit and his sworn supplemental testimony to the magistrate. At the conclusion of the suppression hearing, the circuit court ruled that the magistrate judge signed off on the warrant "on the very piece of paper where the signature of the officer was to be recorded"; recognized the signature as that of Magistrate Deborah O'Quinn; and found "all the evidence and inferences here point to Judge O'Quinn swearing this witness in." Deeming the mistake "at best, a scrivener's error," the circuit court denied the motion to suppress the "cell tower dump" evidence.

Section 17-13-140 requires, "A warrant issued hereunder shall be issued only upon affidavit sworn to before the magistrate, municipal judicial officer, or judge of a court of record establishing the grounds for the warrant." Our courts have clearly stated that "under South Carolina law an unsigned warrant is not a warrant, and is not capable of being issued within the meaning of § 17-13-140." *State v. Covert*, 382 S.C. 205, 209–10, 675 S.E.2d 740, 743 (2009). But in *Covert*, it was the *magistrate* who failed to sign the warrant. *Id.* at 207, 675 S.E.2d at 743. Moreover, in *United States v. Leon*, the United States Supreme Court held evidence should not be suppressed where law enforcement reasonably and in good faith relies on a search warrant, even if that warrant is ultimately found to be invalid. 468 U.S. 897, 920 (1984).

In *State v. Robinson*, this court discussed the propriety of supplementing an insufficient warrant affidavit with sworn oral testimony, explaining that "other jurisdictions have upheld warrants where the affiant was not sworn until after stating facts necessary to supplement the affidavit." 335 S.C. 620, 631, 518 S.E.2d 269, 275 (Ct. App. 1999). In *Robinson*, Judge Carol Connor cited a Michigan Court of Appeals decision declining "to hold invalid a warrant the affidavit for which was unsigned*." Id.* (citing *People v. Mitchell*, 370 N.W.2d 392, 394 (Mich. Ct. App. 1985), *aff'd*, 408 N.W.2d 798 (1987)). After remanding for an evidentiary hearing to consider the basis for the affidavit, the Michigan court ruled "the affidavit supporting the search warrant may be signed and sworn to *nunc pro tunc"* and reversed "all orders suppressing evidence on the basis that the affidavit was unsigned." *Mitchell*, 370 N.W.2d at 394. Here, the circuit court correctly held a pretrial evidentiary hearing to consider the propriety of these search warrants.

The search warrant and the return are signed, and Verizon honored the warrant. Because sworn oral testimony may be given to supplement a facially insufficient warrant affidavit, we find reliance on these search warrants was lawful under *Leon's* good faith doctrine. *See Leon*, 468 U.S. at 922 (establishing that a search executed "pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search" (quoting *Illinois v. Gates*, 462 U.S. 213, 267 (1983) (White, J., concurring))).

**Conclusion**

Carroll's conviction and sentence are

**AFFIRMED.**

**THOMAS and TURNER, JJ., concur.**